427 F.2d 1341
 M. F. A. CENTRAL COOPERATIVE, Appellee,
v.
Edwin O. BOOKWALTER, District Director, etc., Appellant.
M. F. A. OIL COMPANY, Appellee,
v.
UNITED STATES of America, Appellant (two cases).
MISSOURI FARMERS ASSOCIATION, Inc., Appellee,
v.
UNITED STATES of America, Appellant (two cases).
 Nos. 19527-19531.
 United States Court of Appeals, Eighth Circuit.
 June 8, 1970.
 Rehearing En Banc Denied July 20, 1970.
 Rehearing Denied July 23, 1970.
 
 Thomas L. Stapleton, Attorney, Tax Div., Dept. of Justice, Washington, D. C., for appellants; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Robert I. Waxman, Attorneys, Washington, D. C., and Daniel Bartlett, Jr., U. S. Atty., and Daniel R. O'Neill, St. Louis, Mo., on the brief.
 D. Jeff Lance of Cook, Murphy, Lance & Mayer, St. Louis, Mo., for appellees; Harold S. Cook, St. Louis, Mo., on the brief.
 John C. Satterfield, Gen. Counsel, Mississippi Chemical Corporation, Yazoo City, Miss., amicus curiae, Mississippi Chemical Corporation and Coastal Chemical Corporation.
 Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and HEANEY, Circuit Judges.
 VAN OOSTERHOUT, Chief Judge.
 
 
 1
 The timely appeals in these consolidated cases are from final judgments of the District Court granting plaintiff taxpayers refunds on income tax payments made for the fiscal years ending in 1958 and 1959. The trial court's jurisdiction and our jurisdiction upon appeal are established.
 
 
 2
 Case No. 19,527, M. F. A. v. Bookwalter, was tried to the court without a jury. Judgment was entered in favor of the taxpayer. The trial court's opinion, which fairly states the facts, the issues and the basis of the court's decision, is reported at 286 F.Supp. 956.
 
 
 3
 The taxpayers involved in these appeals are farmers' cooperative associations organized under the laws of Missouri. The St. Louis Bank for Cooperatives, hereinafter called the Bank, is one of twelve regional banks for cooperatives. The central bank for cooperatives and the regional banks were organized for the purpose of extending credit exclusively to farmers' marketing, purchasing and service corporations. 12 U.S.C. A. § 1134 et seq. See Legislative history, Farm Credit Act of 1955, U.S.Code Administrative News 1955, Vol. 2, pp. 2947-2951. Each regional bank pursuant to federal statute issued three classes of stock. The stock here involved is Class C stock which is issued only to banks for cooperatives and farmers' cooperative associations. Under § 1134d (a), each farmers' cooperative borrowing from the regional bank is required to invest in Class C stock to the extent of 15% of the interest payable by it to the bank. It is the payment made by taxpayers to the bank pursuant to this provision that is in controversy here.
 
 
 4
 The Act and its legislative history disclose that the original capital would be contributed by the government in exchange for Class A stock; that Class C stock would ultimately replace the Class A stock and become the capital of the bank and that all the bank stock would ultimately be owned by the farmers' cooperatives. As additional capital in the form of Class C stock flowed in, the oldest Class C stock would be redeemed at its $100 per share par value on a revolving fund basis.
 
 
 5
 The banks were a financial success. The cooperatives were able to obtain financing at a favorable interest rate. Some of the Class C shares of stock have been redeemed. While the Class C stock has no established market value, it has a substantial book value and while it is likely not worth its par value at the time it is issued, it certainly has substantial value.
 
 
 6
 Transfer of Class C stock is severely restricted. The stock pays no dividends. Each shareholder is limited to one vote regardless of the amount of stock owned. The government retains considerable control over the operation of the central bank and the regional banks.
 
 
 7
 More detailed factual material with respect to the bank for cooperatives may be found in the trial court's opinion and the statutes and legislative history hereinabove referred to.
 
 
 8
 The parties to all appeals described in the caption have agreed that the resolution of case No. 19,527 will control the outcome of all the consolidated cases.
 
 
 9
 The issue presented in the appeal in case No. 19,527 is whether the amount paid by taxpayer in the 1958 and 1959 fiscal years for purchase of Class C stock of the St. Louis Bank for Cooperatives as a condition of its right to borrow from the bank is deductible from taxpayer's income either as interest under § 163 I.R.C.1954 or as a necessary and ordinary business expense under § 162 I.R.C.1954. The same basic issue is presented in the remaining appeals.[1]
 
 
 10
 The trial court rejected taxpayer's contention that the payment made for Class C stock was deductible as interest. We agree with the trial court's determination of the interest issue and affirm upon the interest issue on the basis of the trial court's opinion as reported at pp. 958-960 of 286 F.Supp.[2]
 
 
 11
 The trial court upheld the taxpayer's contention that payments made for Class C stock were ordinary and necessary business expense deductible from income under § 162. It is quite true that it was necessary for the taxpayer to purchase the Class C stock in order to maintain its eligibility to borrow from the Bank. The Court of Claims in Penn Yan Agway Cooperative, Inc. v. United States, Ct.Cl., 417 F.2d 1372, discusses quite extensively the statutory background and purpose and considers the deductibility of the required amount paid for Class C stock purchases as a business expense but it does not base its decision on the ground that the stock purchase price is a business expense. At p. 1376, the Court points out the interest advantages in borrowing from the Bank of Cooperatives exceed the 15% required for investment in Class C stock. Under § 1134d(c) the Bank is given a lien upon all Class C stock owned by a borrowing corporation upon loans made to such borrower. Thus the stock a cooperative is required to purchase serves the additional purpose of being collateral for loans made.
 
 
 12
 The burden is on the taxpayer to establish that the expenses are both necessary and ordinary. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Greenspon v. Commissioner of Internal Revenue, 8 Cir., 229 F.2d 947, 954.
 
 
 13
 In Commissioner of Internal Revenue v. Tellier, 383 U.S. 687, 689-690, 86 S.Ct. 1118, 1120, 16 L.Ed.2d 185, the Court with respect to the word "ordinary" states:
 
 
 14
 "The principal function of the term `ordinary' in § 162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset. Welch v. Helvering, supra, 290 U.S. at 113-116, 54 S.Ct. 8, 78 L.Ed.2d 212."
 
 
 15
 For further discussion of what constitutes an ordinary expense, see Deputy v. du Pont, 308 U.S. 488, 495, 60 S.Ct. 363, 84 L.Ed. 416; Welch v. Helvering, supra; Greenspon v. Commissioner of Internal Revenue, supra. The taxpayer has not met the burden of establishing that the expenditure here involved is an ordinary expenditure.
 
 
 16
 Moreover, § 1221 I.R.C.1954 defines capital asset as follows: "[T]he term `capital asset' means property held by the taxpayer (whether or not connected with his trade or business), * * *." The Class C stock purchased by the taxpayer fully meets such definition and does not meet any of the exclusions contained in § 1221.
 
 
 17
 Gain or loss on a capital asset is not recognized until the asset is sold or exchanged. There was no sale or exchange of the Class C stock in the tax years here involved.
 
 
 18
 Section 165 I.R.C.1954 includes a share of stock in its definition of a security and provides that if a security becomes worthless it may be treated as a loss from a sale or exchange on the last day of the taxable year. There is no substantial evidence to establish that the stock was worthless at any time. On the contrary, the evidence establishes that Class C stock has a substantial value. The statutes under which the Class C stock was purchased clearly contemplate that the borrowing cooperative acquire stock in the lending bank. The agreement entered into between the bank and the taxpayer, set out at p. 959 of 286 F. Supp., clearly indicates that the taxpayer agreed to invest in capital stock of the bank in accordance with the statutory directive.
 
 
 19
 In Greenspon v. Commissioner of Internal Revenue, we stated:
 
 
 20
 "An allowance for deductions from gross income does not turn on general equitable considerations. Deductions depend upon legislative grace and are allowable only to the extent authorized by statute. Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607." 229 F.2d 947, 954.
 
 
 21
 What is said there applies to our situation here.
 
 
 22
 We hold that the Class C stock which the taxpayer was required to purchase is a capital asset within the meaning of the Internal Revenue Code and that as such, the price paid for the stock cannot be considered an ordinary business expense.
 
 
 23
 We reverse the judgments appealed from in the five consolidated cases with respect to the determination made by the trial court that the expenditures made for Class C stock constitute necessary and ordinary business expense. We agree with the trial court that the price paid for such stock does not constitute interest.
 
 
 24
 The cases are remanded to the trial court for further proceedings consistent with the views herein expressed.
 
 
 
 Notes:
 
 
 [1]
 The question of whether Class C stock issued the taxpayer as a patronage dividend in the tax years here involved should be reported as taxable income was at issue before the trial court and resolved in favor of the taxpayer. The government in its brief specifically states that it is not appealing upon such issue and hence the issue is not before us
 
 
 [2]
 In so doing, we have considered the reasoning of Mississippi Chemical Corp. v. United States, 23 AFTR2d 69-1039 and that of the Court of Claims in Penn Yan Agway Cooperative, Inc. v. United States, Ct.Cl., 417 F.2d 1372